## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **AIMIE COLLINS** | * | **CIVIL ACTION** |
| **VERSUS** | * | **NO. 13-6759** |
| **WELLCARE HEALTHCARE PLANS, INC.** | * | **SECTION "L"(3)** |

## ORDER & REASONS

Before the Court is a Motion for Summary Judgment filed by Defendant Wellcare Healthcare Plans, Inc. ("Wellcare").  (Rec. Doc. 18).  The Court has reviewed the briefs and applicable law, and having heard oral argument on the motion, now issues this Order & Reasons.

## I.      BACKGROUND

This case arises out of a payment that Defendant WellCare Healthcare Plans, Inc. made for Plaintiff Aimie Collins' medical bills incurred as a result of an automobile accident.  Collins filed a Petition for Declaratory Judgment in the 32nd Judicial District Court for the Parish of Terrebonne.  According to Collins, she was injured in an automobile accident on August 21, 2009 and required medical treatment as a result of that accident.  Collins claims that Wellcare, a Medicare Advantage Organization ("MAO")[1], provided a Medicare Advantage Private-Fee-For-Service health insurance plan to her and that Wellcare paid medical expenses on her behalf to several providers.  Collins admits that she instituted an action against the tortfeasor and recovered damages.[2]  Her attorney then deposited the amount paid by Wellcare into a special

---

[1] The Court is aware of countless abbreviations for Medicare statutes and entities.  Throughout this Order & Reasons, the Court will use "MAO" to refer to a Medicare Advantage Organization and "MSP" to refer to the Medicare Secondary Payer Act.

[2] Collins contests the fact that the settlement compensated her for her medical expenses.  (Rec. Doc. 25-2 ¶ 10).

account.  Collins now seeks a declaratory judgment that Wellcare is not entitled to subrogation or reimbursement for the amounts paid.

Wellcare removed the case to this Court pursuant to the Court's diversity jurisdiction.  On January 6, 2014, Wellcare filed an Answer and a Counterclaim.  Wellcare claims that the Medicare Advantage Plan at issue has a statutory right of reimbursement and subrogation which expressly pre-empts contrary State Law.  According to Wellcare, Collins has not exhausted her administrative remedies and her declaratory action should be dismissed.  In its Counterclaim, Wellcare claims that it paid a total of $181,261.97 for medical care and treatments received by Collins and is entitled to reimbursement from Collins' tort settlement.

## II.     Motion for Summary Judgment

### A.  Wellcare's Motion to Dismiss and Motion for Summary Judgment (Rec. Doc. 18)

Wellcare filed the present Motion for Summary Judgment on August 29, 2014 seeking dismissal of Collins' Complaint and the granting of Wellcare's Counterclaim.   Although Wellcare fashioned the motion as a Motion for Summary Judgment, the Court interprets the motion as a Motion to Dismiss Plaintiff's Claim pursuant to Federal Rule of Civil Procedure 12(b)(1), and a Motion for Summary Judgment on Wellcare's Counterclaim pursuant to Federal Rule of Procedure 56.  Wellcare argues that the Court should dismiss Collins' claim because she failed to exhaust the mandatory Medicare exhaustion requirements pursuant to §405(g), and the Court therefore lacks subject matter jurisdiction over her claim.  (Rec. Doc. 18-1 at 12).

Wellcare also asks the Court to grant its Motion for Summary Judgment on its Counterclaim.  Wellcare argues that MAOs are secondary payers under the Medicare Secondary Payer Statute ("MSP") and "share the same exact rights under the MSP as provided to [the United States Government under] traditional Medicare."  (Rec. Doc. 18-1 at 13).   Wellcare goes

on to state that Medicare Part C "specifically gives MA[O]s…a statutory right of secondary payer reimbursement where conditional benefits have already been paid…." (Rec. Doc. 18-1 at 14) (citing 42 U.S.C. § 1395 w-22(a)(4)). Wellcare further argues that "[c]ongressional intent supports the conclusion that MA[O] plans are entitled to the same recovery rights as traditional Medicare." (Rec. Doc. 18-1 at 15).

Wellcare also urges the Court to defer to the Centers for Medicare and Medicaid Services' ("CMS") agency regulations and administrative interpretations. (Rec. Doc. 18-1 at 15). Wellcare argues that "[t]he Secretary has long made clear that an 'MA[O]…will exercise the same rights to recover from a primary plan, entity, or individual that the Secretary exercises under the MSP regulations.'" (Rec. Doc. 18-1 at 16) (citing 42 C.F.R. §422.108(f)). Wellcare avers that its claim for reimbursement is thus consistent with agency regulations and guidance. (Rec. Doc. 18-2 at 17).

**B.  Collins' Opposition to Wellcare's Motion for Summary Judgment**

Collins filed an Opposition to Wellcare's Motion for Summary Judgment on September 10, 2014. Collins argues that she is not required to exhaust administrative remedies because she brought the action in state court based on state law causes of action and does not seek any Medicare benefits or services. (Rec. Doc. 23 at 8). Collins contends that the contract between the parties states that the administrative requirement is "invoked only 'if you have problems getting the Part C medical care or service you request, or payment (including the amount you paid) for a Part C medical care or service.'" (Rec. Doc. 23 at 8). Collins cites a Ninth Circuit case where the court found that a wrongful death action against a private Medicare provider did not "arise under" the Medicare Act. (Rec. Doc. 23 at 8) (*citing Ardary v. Aetna Health Plans of California, Inc.*, 98 F.3d, 496, 500 (9th Cir. 1996)).

In response to Wellcare's Counterclaim, Collins argues that other courts have consistently held that 42 U.S.C. §1395mm(e)(4), a provision identical to the MAO Statute, does not provide for a private cause of action but merely affords parties the right to include subrogation provisions in their contracts.  (Rec. Doc. 23 at 3-4) (citing *Parra v. PacificCare of Arizona, Inc*, 715 F.3d 1146, 1153-54;  *Care Choices HMO v. Engstrom*, 330 F.3d 786 (6th Cir. 2003); *Nott v. Aetna U.S. Healthcare, Inc.*, 303 F. Supp. 2d. 565, 571 (E.D. Pa. 2004)).  Collins contends that Wellcare could only demand reimbursement from Collins if the contract incorporated this subrogation right, and as the contract does not contain such a term, Wellcare does not have a claim for reimbursement.  (Rec. Doc. 23 at 4).

Collins argues that Wellcare does not have a private right of action under the MSP because Wellcare's claim is against Collins, and Collins does not constitute a group plan as required by the statute.  Collins also avers that the MSP does not afford a private cause of action to MAOs.  (Rec. Doc. 23 at 4-5).  Relying on *Parra v. PacifiCare*, Collins argues that her settlement with a third party tortfeasor does not constitute a primary plan under the MSP.  (Rec. Doc. 23 at 5-6).  Collins further argues that Wellcare failed to satisfy a prerequisite of a secondary payer claim because the payment did not constitute a conditional payment.  Here, Collins contends that Wellcare failed to ascertain "whether a payment could 'reasonably be expected' to be made by a primary plan and if so, whether the primary plan had made a payment or could reasonably be expected to make a prompt payment."  (Rec. Doc. 23 at 10) (citing *Thompson v. Goetzmann*, 337 F.3d 489 (5th Cir. 2003); *Bio-Med Applications of Tenn., Inc. v. Cent States Se. and Sw. Areas Health and Welfare Fund*, 656 F.3d 277, 286 (6th Cir. 2011)).  Collins notes she had no duty to inform Wellcare of a third party payment, pursuant to the

contract between Collins and Wellcare.  (Rec. Doc. 23 at 12).  Finally, Collins argues that any

Wellcare claims are prescribed.  (Rec. Doc. 23 at 13).

### C.  **Wellcare's Reply to Collins' Opposition**

Wellcare filed a Reply to Plaintiff's Opposition on September 15, 2014.  Wellcare

contends that numerous other courts have held that parties must exhaust their administrative

remedies for disputes over subrogation rights.  (Rec. Doc. 27 at 2) (citing *Einhorn v. CarePlus*

*Health Plans Inc.*, 14-61135-CIV-BLOOMVALLE, 2014 WL 4385912  at *2-3 (S.D. Fla. Sept.

2, 2014); *Cupp v. Johns, et al.*, No. 2:14-cv-02016, 2014 WL 916489 at *3; *Potts*, 987 F. Supp.

2d at 188; *Phillips v. Kaiser Found. Health Plan, Inc*, 953 F. Supp. 2d 1078, 1089 (N.D. Cal.

2011)).   Wellcare argues that because the Court has jurisdiction pursuant to its diversity

jurisdiction,[3] Wellcare can enforce its rights under the Medicare Act and does not require a

private cause of action.  In response to Collins' assertion that Wellcare does not have subrogation

rights because the contract does not include a reimbursement term, Wellcare contends that the

right to reimbursement is statutory and not contractual.  (Rec. Doc. 27-3 at 5).

Wellcare avers that Plaintiff's assertion that Wellcare cannot bring a private cause of

action because Collins is not a "group plan" is without merit under the MSP.  (Rec. Doc. 27-3 at

7).  Wellcare argues that a primary plan includes an automobile or insurance policy under the

MSP, and Collins recovered settlement funds from an automobile or insurance policy.  (Rec.

Doc. 27-3 at 7-8).  Wellcare thus argues that it is "entitled to reimbursement of its conditional

payments under 42 U.S.C. §1395w-22(a)(4)(B), 42 U.S.C. § 1395mm(e)(4), and 42 C.F.R. §

422.108(d)."  (Rec. Doc. 27-3 at 8).

---

[3] While Wellcare emphasizes that this Court has jurisdiction over the Counterclaim pursuant to its diversity jurisdiction, 28 U.S.C. § 1332, the Court also has jurisdiction over Wellcare's claim pursuant to its federal question jurisdiction under 28 U.S.C. § 1331.  *In re Avandia Mktg. Sales Practices and Products Liability Litigation*, 685 F.3d  353, 357 (3d Cir. 2012).

Wellcare counters Collins' argument that it did not make a conditional payment and asserts that it is not required to notify any defendant or carrier of a lien's existence. (Rec. Doc. 27-3 at 9). Furthermore, Wellcare argues that Collins' prescription argument is without merit as she failed to respond to any of Wellcare's inquiries, and in any event, the applicable statute of limitations for Medicare reimbursement actions is six years. (Rec. Doc. 27-3 at 9).

## III.    Law and Analysis

The Court understands the confusion caused by the Medicare acronyms, so to help assuage such confusion for the duration of this analysis, the Court will again summarize the acronyms to be used. "MSP" refers to the Medicare Secondary Payer Act, 42 U.S.C. § 1395y(b), and "MAO" refers to a Medicare Advantage Organization. The "MAO Statute" refers to Medicare Part C, 42 U.S.C. § 1395w-21 - 1395w-29, or the part of the Medicare Act that specifically regulates MAOs.

Wellcare's motion presents the Court with a number of complicated issues, many of which are dispositive to the outcome of this motion. The Court will first proceed with the Motion to Dismiss and examine whether the Court lacks subject matter jurisdiction over Collins' claim due to Collins' failure to exhaust her administrative remedies. The Court will then examine the Motion for Summary Judgment on Wellcare's Counterclaim.

### A.  Background

To put this matter in perspective and attempt to illuminate this obscure legal terrain, a brief summary of the Medicare regime is helpful. Congress enacted the Medicare Act in 1965 by adding a new Title, Title XVIII, to the Social Security Act, and it functions as a "federally funded health insurance program for the elderly and the disabled." *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 506 (1993). The Medicare Statute consists of five parts – Part A, B, C, D,

and E.  Part A and Part B "create, describe, and regulate traditional fee-for-service, government-administered Medicare." *In re Avandia Mktg. Sales Practices and Products Liability Litigation*, 685 F.3d 353, 357 (3d Cir. 2012) (citing 42 U.S.C. §§ 1395c to 1395i-5; §§ 1395-j to 1395-w). Part C outlines the Medicare Advantage program, described in more detail below, and provides that Medicare beneficiaries may elect for private insurers to deliver their Medicare benefits to them. 42 U.S.C. §§ 1395w-21-29.  Part D provides for prescription drug coverage for Medicare beneficiaries, and Part E contains the "miscellaneous provisions."

Initially, Medicare served as the primary payer and paid its beneficiaries' medical costs when other entities were responsible for those costs, such as private health insurance.  *See Taransky v. Sec'y of U.S. Dep't of Health& Human Servs.*, 760 F.3d 307, 309 (3d Cir. 2014).  In 1980, Congress altered the Medicare payment scheme in an effort to reduce escalating costs and added the Medicare Secondary Payer provisions ("MSP") to the Medicare Act.  Omnibus Reconciliation Act of 1980, Pub. L. No. 90-499, 94 Stat. 2599.  Under the MSP, codified at 42 U.S.C. § 1395y, Medicare is the "secondary payer" to other sources who are considered the "primary payer."  "In other words, 'Medicare serves as a back-up insurance plan to cover that which is not paid for by a primary insurance plan.'" *Caldera v. Insurance Co. of the State of PA*, 716 F.3d 861, 863 (5th Cir. 2013) (quoting *Goetzmann*, 337 F.3d at 496).  The statute provides that Medicare cannot pay medical expenses when "payment has been made or can reasonably be expected to be made under a workman's compensation law or plan of the United States or a State or under an automobile or liability insurance policy or plan (including a self-insured plan) or no fault insurance."  42 U.S.C. § 1395y(b)(2)(A)(ii).  If a primary plan "has not made or cannot reasonably be expected to make payment," the Secretary can make a conditional payment.  42

U.S.C. § 1395y(b)(2)(B)(i).  Since Medicare remains the secondary payer, the primary plan must

reimburse Medicare for the conditional payment.  42 U.S.C. § 1395y(b)(2)(B)(ii).

In 1997, Congress amended the Medicare Act to afford beneficiaries the option to receive

their Medicare benefits through private organizations, MAOs.  Pursuant to these amendments,

most Medicare beneficiaries can now elect to receive their benefits through Original Medicare or

through an MAO.  "The congressional goal in creating the Medicare Part C option was to

harness the power of private sector competition to stimulate experimentation and innovation to

create a more efficient and less expensive Medicare system."  D. Gary Reed, *Medicare*

*Advantage Misconceptions Abound*, 27 Health Law 1, 3 (2014);  *See also Parra*, 715 F.3d at

1152 (quoting H.R.Rep. No. 105-149, at 1251 (1997)) ("Part C is intended to 'allow

beneficiaries to have access to a wide array of private health plan choices in addition to

traditional fee-for-service Medicare and enable the Medicare program to utilize innovations that

have helped the private market contain costs and expand health care delivery options.'" ).

Beneficiaries who elect Original Medicare and those who elect a MAO plan both receive

Medicare benefits.  The process works as follows: CMS pays the MAOs a fixed amount for each

enrollee to deliver their benefits.  42 U.S.C. §§ 1395w-21, 1395w-23.  The MAO then delivers

Medicare benefits to the enrollee, and the MAO assumes the risks related to insuring those

beneficiaries.  "The MAO is required to provide the benefits covered under Parts A and B to

enrollees, but it may also provide additional benefits to its enrollees."  *In re Avandia*, 685 F.3d at

358 (citing 42 U.S.C. § 1395w-22(a)(1)-(3)).

Interpretation and application of the Medicare Act is no simple feat.  As the Fourth

Circuit observed, the Medicare Act is "among the most completely impenetrable texts within

human experience." *Rehab Ass'n v. Kozlowski*, 42 F.3d 1444, 1450 (4th Cir. 1994).   The issues presented to this Court support that statement.

### B.  Plaintiff's Failure to Exhaust Her Claim for Declaratory Judgment

The Plaintiff in this case did not assert a claim for benefits to the administrative agency and to the Secretary as required by 42 U.S.C. § 405(h).  Instead she filed a declaratory action in state court which has been removed to this Court.   "Section 405 (h) of Title 42 is more than an exhaustion requirement; it precludes federal courts from relying on 28 U.S.C. § 1331 for exercising jurisdiction over claims arising under the Medicare Act." *Mason v. Sebelius*, Civ. No. 11-2370, 2012 WL 1019131 at *4 (D.N.J. March 23, 2012).   Under 42 U.S.C. § 405(h), which is made applicable to the Medicare Act by 42 U.S.C. § 1395ii,

> No findings of fact or decision of the [Secretary] shall be reviewed by any person, tribunal, or governmental agency except as herein provided [in § 405(h)].  No action against the United States, the Commissioner of Social Security, or any officer or employee thereof shall be brought under section 1331 or 1346 of Title 28 to recover on any claim arising under this subchapter.

42 U.S.C. § 405(h).

The Supreme Court has held that all claims that "arise under" the Medicare Act must exhaust their administrative remedies prior to any judicial review.  *Heckler v. Ringer*, 466 U.S. 602, 605 (1984).   "[T]he Secretary has provided that a 'final decision' is rendered on a Medicare claim only after the individual claimant has pressed his claim through all designated levels of administrative review." *Id.* at 606.  Moreover, the Supreme Court construes claims "arising under" quite broadly.  *Id.* at 605.  Exhaustion is required "where 'both the standing and the substantive basis for the presentation of a claim is the Medicare Act.'" *Shalala v. Illinois Council on Long Term Care, Inc.*, 529 U.S. 1, 12 (2000) (quoting *Weinberger v. Salfi*, 422 U.S.

749, 750-51 (1975)).  The Supreme Court explained the practical reasoning for the exhaustion requirement:

> Exhaustion is generally required as a matter of preventing premature interference with agency processes, so that the agency may function efficiently and so that it may have an opportunity to correct its own errors, to afford the parties and the courts the benefit of its experience and expertise, and to compile a record which is adequate for judicial review

*Bowen v. City of New York*, 476 U.S. 467, 484 (1986).

Plaintiff avers that her claim does not "arise under" Medicare because her claim does not seek medical care, services, or other benefits.  In an instructive case, *Potts v. Rawlins Co., LLC*, the plaintiffs had all sustained personal injuries from accidents caused by third parties, and the MAOs had provided medical benefits to the plaintiffs and later asserted liens on their tort settlements.  897 F. Supp. 2d 185, 190 (S.D.N.Y. 2012).   Plaintiffs filed suit in state court, seeking a declaratory judgment regarding the liens.  *Id.*  Plaintiffs argued that exhaustion was not required because "their claims [were] not a 'request for a determination of benefits, nor a challenge to the denial of benefits,'" but rather they sought to challenge the MAOs' attempt to enforce the subrogation contractual terms that conflicted with a New York state statute.  *Id.* at 193.

The district court rejected this argument and held that Plaintiffs' claims arose under the Medicare Act.  *Id.* at 194.  The district court stated that "even though Plaintiffs characterize the case as concerning issues of state law only[,] [t]he merits of Plaintiffs' claims necessarily turn on the interpretation of the Medicare Act's secondary payer provisions for the MA[Os] [ ]."  *Id.*  The court found that application of the New York statute required a determination of whether the Medicare Act preempted the state law and therefore arose under the Medicare Act.  *Id.*

Although *Johnson v. United States Department. of Health and Human Services* involved the Department of Health and Human Services ("DHHS"), and not a MAO, the Fifth Circuit's unpublished, *per curiam* opinion is also instructive on this issue.  In that case, the plaintiff brought a claim that DHHS was not entitled to reimbursement from the plaintiff's settlement proceeds under the MSP.  *Johnson v. U.S. Dep't of Health and Human Servs.*, 142 Fed. Appx. 803 (5th Cir. 2005).  The Fifth Circuit held that because the plaintiff's claim "requires interpretation of the Medicare Secondary Payer Act, 42 U.S.C. § 1395y(b)(2), the claim arises under the Medicare Act."  *Id.*

These decisions are logical, as allowing plaintiffs to circumvent the administrative process by tailoring their claims as separate attacks on a Medicare organization would undermine the administrative process.  The Seventh Circuit noted:

> A party cannot avoid the Medicare Act's jurisdictional bar simply by styling its attack as a claim for collateral damages instead of a challenge to the underlying denial of benefits. If litigants who have been denied benefits could routinely obtain judicial review of these decisions by recharacterizing their claims under state and federal causes of action, the Medicare Act's goal of limited judicial review for a substantial number of claims would be severely undermined.

*Bodimetric Health Servs., Inc. v. Aetna Life & Cas.,* 903 F.2d 480, 487 (7th Cir. 1990).

Other courts have applied the same logic and have held that a claim arises under the Medicare Act when the object of a plaintiff's claim is to retain benefits based on an argument that the MSP does not apply.  *See Einhorn*, 2014 WL 4385912 at *2-*3 (holding that plaintiff's claim arises under the Medicare Act when she does not seek Medicare benefits but argues that a Florida consumer protection law renders the MAO lien on her tort settlement excessive); *Phillips*, 953 F. Supp. 2d at 1089 ("To the extent Plaintiff is claiming that Kaiser [a MAO] is running afoul of the Medicare Act by collecting reimbursement from her in an amount greater

than what is permitted under the act she is making a claim for benefits and must exhaust her claim.").

Collins' claim for a declaratory judgment is similar to these cases. While Collins fashions her claim as a declaratory judgment and invokes Louisiana State Law, she ultimately seeks to retain her benefits based on an argument that the Medicare Act does not afford Wellcare a subrogation right. Such a claim arises under the Medicare Act.

Collins cites the case *Ardary v. Aetna Health Plans of California, Inc.*, a Ninth Circuit case, as support for her argument that her claim does not arise under the Medicare Act. But Collins' reliance on this case is misguided. In that case, plaintiffs brought a wrongful death suit against the Medicare provider alleging that the provider had represented to them that an injured party would immediately be transferred to a larger hospital facility during an emergency. *Ardary*, 98 F.3d at 497-98. Plaintiffs claimed that the provider failed to act on this promise when the plaintiffs' husband and father suffered a heart attack, and ultimately died. *Id.* As the Ninth Circuit noted, this case constituted a tort action against the Medicare provider and did not involve any benefit dispute. *Id.* at 501. The Ninth Circuit held that a state law tort claim against Medicare, allegedly committed during its administration of benefits, did not arise under the Medicare Act. But that case differs from the instant claim, as Collins' claim *does* center on her Medicare benefits. While the Complaint "seeks a declaration that Defendant, Wellcare Healthcare Plans, Inc., is not entitled to subrogation or reimbursement for the amounts paid," (Rec. Doc. 1-4 at 3), and Plaintiff avers that her Complaint is anchored in Louisiana State Law, such a declaration inherently demands an interpretation of the Medicare Act. Collins' claim therefore arises under the Medicare Act and this Court lacks subject matter jurisdiction to entertain her claim.

### C. Defendant's Counterclaim

The Court next turns to Wellcare's Counterclaim.  "[A] compulsory counterclaim is not required to be dismissed where it is supported by a proper ground of federal jurisdiction." *Haberman v. Equitable  Life  Assur. Soc. of the U.S.*, 224 F.2d 401, 409 (5th Cir. 1955).  This Court has jurisdiction over Wellcare's Counterclaim pursuant to both 28 U.S.C §§ 1331 and 1332.  Moreover, Wellcare's Counterclaim is not subject to the same exhaustion requirement as Collins because 42 U.S.C. § 405(h) does not require Medicare organizations to exhaust administrative remedies.

Wellcare's Counterclaim presents complicated issues and compels this Court to engage in a multi-step analysis.  MAOs can rely on two possible causes of action within the Medicare Act to assert their claims for conditional payments.  The MAO Statute supplies a potential cause of action, but the Ninth Circuit held that the MAO Statute only allows MAOs to include reimbursement rights in their contracts and does not automatically afford MAOs a cause of action.  The MSP provides the second avenue, and the Third and Sixth Circuit recently held that a MAO can rely on this cause of action to bring suit against a primary plan.

The Court will first analyze whether Wellcare has a cause of action under the MAO.  The Court will next examine whether Wellcare has a cause of action under the MSP.  Even if the Court finds a cause of action under the MSP, the MSP analysis does not end there.  Rather, to determine whether Wellcare has a right to reimbursement under the MSP, the Court will engage in a statutory analysis to determine whether the facts of this case satisfy the MSP cause of action requirements.  Specifically, (1) whether Collins' tort settlement constitutes a primary plan; (2) if the settlement is a primary plan, whether it must satisfy paragraphs (1) and (2)(A); and (3) whether Wellcare made a conditional payment that Collins did not reimburse in accordance with

paragraph 2(a).  If the facts satisfy the MSP definitional requirements, the Court will then examine whether Wellcare has a cause of action for double damages pursuant to the MSP cause of action.  Finally, the Court will examine whether Wellcare's claims are prescribed.

### 1. *Private Cause of Action for MAOs under the Medicare Act*

Wellcare argues that this Court has jurisdiction pursuant to its diversity jurisdiction and Wellcare can therefore enforce its rights outlined in the Medicare Act, but this argument is misguided.  A right does not automatically afford a party a cause of action to enforce that right, but rather "[t]he judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy."  *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001).  Moreover, "[t]he Supreme Court has counseled that '[j]urisdiction…is not defeated…by the possibility that the averments might fail to state a cause of action on which petitioners could actually recover.'"  *Parra*, 715 F.3d at 1151 (*quoting Bell v. Hood*, 327 U.S. 678, 682 (1946)).  "The question of whether a cause of action exists is not a question of jurisdiction."  *Burks v. Lasker*, 441 U.S. 471, 476 n.5 (1979).  Therefore, while the Court has jurisdiction over the instant case, the issue remains for the Court to determine whether Wellcare has a cause of action to assert its rights outlined in its Counterclaim.

Wellcare asserts two statutory arguments as support that the Medicare Act affords a MAO a private cause of action: the MAO-specific statute ("MAO Statute") (42 U.S.C. § 1395w-21 - § 1395w-29) and the MSP (42 U.S.C. §1395y *et seq.*).  The Court will address each in turn.

### a.  MAO Specific Statute

The MAO Statute states that a MAO "*may...charge*...the insurance carrier, employer or other entity which under such law, plan, or policy is to pay for the provision of such services such individual to the extent that the individual has been paid under such law, plan, or policy for

14

such services."  42 U.S.C. § 1395w-22(a)(4) (emphasis added).  This language is distinguishable

from the language found in the MSP, which states a "primary plan, and an entity that receives

payment from a primary plan, *shall* reimburse the appropriate Trust Fund."  42 U.S.C. §

1935y(b)(2)(B).  Collins contends that the distinction in this language and the absence of any

cause of action language in the MAO Statute, unlike the MSP, compels this Court to find that

there is no cause of action for MAOs under the MAO Statute.

   Some courts have held that no cause of action exists under 42 U.S.C. § 1395mm(e)(4), a

provision that governs HMOs and contains almost identical language to the MAO Statute.  *See*

*Engstrom*, 330 F.3d 786; *Nott*, 303 F. Supp. 2d 565.   These courts emphasized that Congress

explicitly created a private cause of action in the MSP statute and did not use the same, forceful

language in the HMO statute.   These Courts have held that HMOs must include subrogation

rights within their contracts.

   The Ninth Circuit relied on these rulings when it held that the MAO statute does not

create a private right of action but affords MAOs the right to establish such rights within their

contracts.  *Parra*, 715 F.3d at 1153-54.  The Ninth Circuit stated that "[t]he MAO Statute simply

allows [the MAO] to provide via its contracts that its insurance is secondary to other available

plans and allows recovery from a primary plan that refuses to reimburse the MAO for payments

made on behalf of a participant."   The Ninth Circuit concluded that "[i]n the end, the MAO's

claim thus arises by virtue of its decision to include provisions allowing such recovery in its

contract with plan participants."  *Id.* at 1154.

   Other courts' emphasis on MAO "contracts" or "insurance policies" is problematic

because MAO insurance policies do not exist.  MAO beneficiaries merely elect to receive a

MAO plan rather than an Original Medicare plan.  *See generally* D. Gary Reed, *Medicare*

*Advantage Misconceptions Abound*, 27 Health Law 1, 6-5 (2014); Eileen Kuo, *Medicare Advantage: Medicare Advantage or "Private" Insurance? Developments in Medicare Secondary Payer Act*, 2013 Health L. Handbook §12:9.  Rather than complete an insurance application, MAO beneficiaries elect a MAO plan by the "filing of an appropriate election form with the organization."  42 U.S.C. § 1395w-21(c)(2)(A).  As dictated by the CMS regulations, except for certain limitations,

> Each MA[O] must accept with restriction…individuals who are eligible to elect an MA[O] plan that the MA[O] offers and who elect an MA[O] plan during initial coverage election periods under § 422.62(a)(1), annual election periods under § 422.62(a)(2), and under circumstances described in § 422.62(b)(1) through (b)(4).

42 C.F.R. § 422.60(a)(1).  Moreover, if a beneficiary believes that the MAO has not provided benefits to which he is entitled, the beneficiary may not sue for breach of contract or a bad faith refusal to pay, but must exhaust his administrative remedies, as evidenced by the prior section's discussion.  This Court need not weigh in on either side of the applicability of the MAO Statute to this case because the Court finds that a cause of action exists under the MSP.

### b.  MSP Statute

The MSP provides a private cause of action for the United States pursuant to 42 U.S.C. § 1395y(b)(2)(B)(iii) and for unspecified plaintiffs[4] under 42 U.S.C. § 1395y(b)(3)(A).  The language for the latter reads:

> There is established a private cause of action for damages (which shall be in an amount double the amount otherwise provided) in the case of a primary plan which fails to provide payment (or appropriate reimbursement) in accordance with paragraphs (1) and (2)(A).

42 U.S.C. § 1395y(b)(3)(A).

---

[4] The plaintiffs who can bring a cause of action under 42 U.S.C. § 1395y(b)(3)(A) also includes the United States. *See Zinman v. Shalala*, 67 F.3d 841, 844-45 (9th Cir. 1995).

The Third Circuit introduced a new interpretation of the MSP that affords MAOs a private right of action.  As one commentator noted, "[a] seismic shift in the jurisprudential landscape occurred with the decision *In re Avandia Marketing Sales Practices and Products Liability Litigation*."  David. Melancon, *It's Time to Cross that Bridge: Reimbursement Rights of Medicare Advantage Organizations*, 56 No. 5 DRI for Def. 30 (2014).  In that case, the Third Circuit, looking towards the MSP instead of the MAO statute, held that the MSP provided a private cause of action for MAOs.  Analyzing the statutory language, the Third Circuit found that the MSP private cause of action language was broad and did not include any narrowing language that excluded MAOs.  *In re Avandia*, 685 F.3d at 360.  The Third Circuit emphasized that other parts of the MSP specified whether certain chapters were targeted or excluded from a provision. *Id.*  For example, 1395(y)(c) provides "payment under Part B of this chapter."  However, Paragraph (2)(a) consistently refers to payments "under this subchapter" and does not specifically exclude Part C.  The Third Circuit also noted that private Medicare risk plans predated the enactment of the MSP, so Congress was aware that private Medicare providers existed and could have explicitly prevented them from suing under the MSP private cause of action provision.  *Id.*

The Third Circuit concluded that the plain reading of the statute provides a private cause of action.  Any other interpretation would result in an ambiguity since other parts of the Medicare Act suggest that there is a cause of action.  Such an ambiguity would require the court to apply *Chevron* deference, which would compel the court to find a private right of action. CMS regulations state that "MA[Os]… will exercise the same rights to recover from a primary plan, entity, or individual that the Secretary exercises under the MSP regulations in subparts B through D of part 411 of this chapter." 42 C.F.R. § 422.108.  Moreover, two CMS Directors sent out a

memorandum that reasserted this position on December 5, 2011, stating that "[n]otwithstanding [ ] recent court decisions, CMS maintains that the existing MSP regulations are legally valid and an integral part of Medicare Part C and D programs."  Ctrs. For Medicare & Medicaid Svcs., Dep't of Health and Human Svcs. Memorandum: Medicare Secondary Payment Subrogation Rights (Dec. 5, 2011) *available at* http://www.cms.gov /Medicare /HealthPlans/HealthPlansGenInfo/downloads/21_MedicareSecondaryPayment.pdf.

Following the Third Circuit's opinion, the Sixth Circuit allowed a MAO-suit for reimbursement to go forward under the MSP.  *Michigan Spine & Brain Surgeons, PLLC v. State Farm Mut. Auto. Ins. Co.*, 758 F.3d 787 (6th Cir. 2014).  Furthermore, a district court judge in the Western District of Texas recently overruled a Magistrate's decision that flatly rejected the Third Circuit's statutory interpretation, noting that the court found the "Third Circuit's analysis persuasive."  *Humana Ins. Co. v. Farmers Texas County Mutual Insurance Co.,* 13-cv-00611-LV, Rec. Doc. 44 (W.D. Tex. Sept. 24, 2014).  In *Parra v. PaifiCare*, the Ninth Circuit distinguished its case from *Avandia* and withheld judgment as to whether the Third Circuit's analysis was correct.  *Parra*, 715 F.3d at 1154.

This Court finds that the Third Circuit's analysis is persuasive.  The MSP's statutory text does not include any narrowing language that would exclude MAOs from the private cause of action clause, while the statute includes such narrowing language in other parts of the MSP.  The text therefore clearly indicates that MAOs are included within the purview of parties who can bring a private cause of action under the MSP.  Even if the text was not clear to this end—and this Court believes it is—such ambiguity would trigger *Chevron* deference and lead to the same result.

2. *Can Wellcare Bring a Cause of Action under the MSP?*

This Court has determined that MAOs can maintain a cause of action under the MSP, so the next inquiry focuses on whether Wellcare can bring a cause of action under this provision. This analysis will center on whether the facts of the case correspond to the statutory language of the MSP cause of action provision. Collins argues that Wellcare cannot maintain a cause of action because (1) the tort settlement does not constitute a "primary plan" under the MSP; (2) Collins did not neglect to make a payment in "accordance with paragraphs (1) and (2)(A)" because the settlement is not a group plan under Paragraph (1), and Wellcare also did not make a conditional payment to Collins. The Court will address each argument in turn.

### a. Tort Settlement a "Primary Plan" under the Medicare Secondary Payer Act

The first determination is whether Collins' tort settlement constitutes a primary plan under the MSP because there is only a cause of action "in the case of a *primary plan*". 42 U.S.C. § 1395y(b)(3)(A). A "primary plan" is defined under the MSP:

> A group health plan or large group health plan, to the extent that the clause (i) applies, and a worker's compensation law or plan, an automobile or liability insurance policy or plan (including a self-insured plan) or no fault insurance, to the extent that clause (ii) applies. An entity that engages in a business, trade, or profession shall be deemed to have a self-insured plan if it carries its own risk (whether by a failure to obtain insurance, or otherwise) in whole or in part.

42 U.S.C. § 1395y(b)(2)(A)(ii).

Congress amended the MSP in 2003 to include tortfeasors and their insurance carriers in the primary plan definition. *See Bio-Medical Applications of Tennessee, Inc.*, 656 F.3d at 289-90; *Brown v. Thompson*, 374 F.3d 253 (4th Cir. 2004); *Mason v. Sebelius*, 2012 WL 1019131 at *7. These amendments signified a response to several circuit court decisions that had held that a tortfeasor and his insurance carrier did not qualify as a primary plan. *See Goetzman*, 337 F.3d at

19

489; *Mason v. American Tobacco Co.*, 346 F.3d 36, 42 (2d Cir. 2003).  In *Brown v. Thompson*, the Fourth Circuit explained that the plaintiff had conceded that Medicare is entitled to "reimbursement of any payment it makes for medical services if a primary plan later pays for those medical services as part of a settlement agreement."  374 F.3d at 258.  The Fourth Circuit had determined that a tort settlement constitutes a primary plan under the 2003 amendments.  *Id.*

There is a distinction in the statutory language regarding what the United States can seek to recover under its cause of action pursuant to 42 U.S.C. § 1395y(b)(2)(B)(iii),  and what any Medicare entity can recover under their private cause of action pursuant to 42 U.S.C § 1395y(b)(3)(A).  The MSP provides that the United States "may recover under this clause from any entity that has received payment from a primary plan *or from the proceeds of a primary plan's payment to any entity*."  42 U.S.C. § 1395y(b)(2)(B)(iii) (emphasis added).  "This cause of action provision allows the United States to seek reimbursement from 'the beneficiary herself.'" *Haro v. Sebelius*, 747 F.3d 1099, 1105 (9th Cir. 2013) (quoting *Zinman v. Shalala*, 67 F.3d 841, 844-45 (9th Cir. 1995).  The private cause of action outlined in 42 U.S.C. § 1395(y)(3)(A) includes no such language but states "[t]here is established a private cause of action for damages…in the case of a primary plan which fails to provide for primary payment (or appropriate reimbursement) in accordance with paragraphs (1) and (2)(A)."  42 U.S.C. § 1395(y)(3)(A).

Although *Brown* involved a claim by the Secretary seeking reimbursement from a tort settlement, the Fourth Circuit did not specifically rely on the government-specific provision (42 U.S.C. § 1395y(b)(2)(B)(iii)) when it held that the Secretary had a right to reimbursement from settlement funds under the MSP.  Rather, the Fourth Circuit focused its attention on whether the settlement was funded by a primary plan, ultimately finding that a primary plan funded the

settlement and that the Secretary was therefore entitled to reimbursement.  In its discussion, the court noted that "[a]ccording to the Secretary, Kaiser funded its malpractice settlement with Brown out of a 'self-insured plan' and therefore acted as a 'primary plan' within the meaning of MSP."  374 F.3d  at 261.  The court went on to note that with the 2003 Congressional amendments, "Congress has plainly indicated that the term 'self-insured' plan should be given a relatively broad definition, unrestricted by formalistic requirements."  *Id.* at 262.  Finding that Kaiser, the tortfeasor, did have what qualified as a self-insured primary plan, the Fourth Circuit held that the MSP entitled the Secretary to reimbursement from the settlement proceeds.  *Id.*  The Fourth Circuit decision thus relied on the definition of a primary plan to ultimately hold that the Secretary was entitled to reimbursement from a tort settlement funded by a primary plan.

In *Parra*, the Ninth Circuit held that an MAO could not bring a claim against a beneficiary's survivors and seek reimbursement from a wrongful death tort settlement.  715 F.3d at 1150.   The MAO-defendant claimed reimbursement rights for the deceased's medical expenses from the settlement, which was held in trust pending the outcome of the dispute.  *Id.* The Ninth Circuit held that the "statute, which allows recovery of double damages, was not intended to apply to a primary plan which, for all intents and purposes, has interpleaded a sum subject to conflicting claims."  *Id.* at 1155.  The Ninth Circuit thus held that there was no private cause of action.  *Id.*

The Court finds the reasoning of the Fourth Circuit more compelling than that of the Ninth Circuit because there is no real distinction between a claim against a tortfeasor or his insurer to obtain reimbursement and a claim against a beneficiary to obtain reimbursement from a settlement *funded* by a tortfeasor or his insurer.  In both cases, the money ultimately comes from the same source: the tortfeasor or his insurer, who are both considered "primary plans."

21

The fact that the money changed hands from the tortfeasor or his insurer to the beneficiary does not alter the nature of the settlement funds.  Moreover, the Ninth Circuit's holding produces an odd result, as that interpretation would encourage beneficiaries to hide their settlements from the MAOs and provide no recourse to the MAOs against the beneficiaries for such action.    In essence, the beneficiaries would recover twice for the same injury: medical expenses.  Beneficiaries would thus receive a windfall from artfully concealing any cases or settlements with third party tortfeasors' and their insurance companies.

Wellcare argues that its subrogation rights "are spelled out separately in 42 U.S.C. § 1395w-22(a)(4), 42 U.S.C. § 1395mm(e)(4) and 42 C.F.R. § 422.108(d)."  (Rec. Doc. 27-3 at 6).  The CMS regulations aver that a MAO can recover from "the Medicare enrollee, to the extent that he or she has been paid by the carrier, employer, or entity for covered medical expenses." 42 C.F.R. § 422.108(d)(2).  The regulations also state that "[t]he MA[O] [ ] will exercise the same rights to recover from a primary plan, entity, or individual that the Secretary exercises under the MSP regulations in subparts B through D of part 411 of this chapter."  42 C.F.R. § 422.108(f).  Chapter 411 outlines that CMS may recover conditional payments from a beneficiary.  42 C.F.R. § 411.23(b).  The agency regulations thus call for MAOs to maintain the right to bring reimbursement claims against the beneficiaries.  While this Court finds that the statutory language clearly indicates that a beneficiary's settlement constitutes a primary plan, the term is at best ambiguous.  A finding of ambiguity would compel this Court to apply *Chevron* deference and would lead to the same result based on the CMS regulations.  In sum, the Court finds that Collins' tort settlement constitutes a primary plan, thus permitting the Court to move to the next step in this statutory exercise.

### b. Collins' Settlement Satisfy Paragraphs (1) and (2)(A)

Collins further argues that Wellcare cannot bring a cause of action because the MSP cause of action requires a plan to fulfill both conditions outlined in § 1395y(b)(1) and (b)(2)(a) in order to bring a private cause of action.  42 U.S.C. § 1395y(b)(3)(A) states "[t]here is established a private cause of action ….in the case of a primary plan which fails to provide for primary payment (or appropriate reimbursement) in accordance with paragraphs(1) *and* (2)(A)."  42 U.S.C. § 1395y(b)(3)(A) (emphasis added).  Paragraph(1) describes group plans and paragraph (2)(a) directs that Medicare organizations serve as secondary payers when they make conditional payments, as outlined in 42 U.S.C. §1395y(b)(2)(B).

### i. *Tort Settlement is not a "group plan" under Paragraph(1)*

Collins avers that the "and" of the MSP private cause of action is conjunctive, and since Paragraph (1) describes group health plans, a tort settlement cannot satisfy this requirement.  As support for her argument, Collins cites *Bio-Med. Applications of Tennessee Inc. v. Central States Southeast & Southwest Areas Health & Welfare Fund* ("*Bio-Med*"). 656 F.3d 277.  The Sixth Circuit recently clarified its holding in *Bio-Med* and rejected the argument put forth by Collins. In *Michigan Spine and Brain Surgeons, PLLC v. State Farm Mutual Auto Ins. Co.*, the Sixth Circuit held that the MSP provides a private cause of action for primary plans other than group health plans.  758 F.3d at 793.  The court noted that limiting the MSP's private cause of action to only group health plans "would eviscerate the private cause of action as it relates to non-group health plans."  *Id.*

Other circuits have not limited the private cause of action to claims against group health plans.  *See In re Avandia*, 685 F.3d at 367 (upholding a claim properly asserted against a drug

manufacturer); *Manning v. Utilities Mutual Insurance*, 254 F.3d 387, 392 (2d. Cir. 2001) (stating that the MSP authorizes plaintiff's private cause of action against a worker's compensation insurance carrier).  The Fifth Circuit even stated that under the MSP, a primary plan is defined as a "group health insurance plan, or as any other type of insurance plan, such as worker's compensation, liability insurance, or a self-insurance plan, that may reasonably be expected to pay for services promptly."  *Goetzmann*, 337 F.3d at 496.

"If possible, [the Fifth Circuit] interpret[s] provisions of a statute in a manner that renders them compatible, not contradictory."  *Asadi v. G.E. Energy (USA) LLC*, 720 F.3d 620, 622 (5th Cir. 2013).  The definition of a primary plan as defined in Paragraph 2(A) specifies plans other than group health plans.  *See* 42 U.S.C. § 1395y(b)(2)(A)(ii).  Specifically, that Paragraph references payments from workers' compensation plans, automobile insurance, liability insurance, and no fault insurance.  *Id.*  Collins' interpretation would render much of the "primary plan" definition and references within Paragraph 2(A) completely futile, a complete waste of statutory text.  A more logical reading would require group health plans to meet the requirements imposed by Paragraph 1, not to limit the private cause of action to only those plans that meet the definition of a group health plan of Paragraph 1.  The Sixth Circuit's reasoning is compelling, and this Court refuses to "eviscerate" the private cause of action for non-group health plans under the MSP as advanced by Collins.

### ii.   *Wellcare's Conditional Payments under Paragraph(2)(A)*

The next issue is whether Collins did not make a payment in accordance with Paragraph 2(a), which describes Medicare as a secondary payer and outlines that Medicare can recover conditional payments.  Collins argues that Wellcare did not make a conditional payment because it failed to ascertain whether another payer would be responsible for her medical expenses.

According to Collins, Wellcare could then only make a "conditional payment if the primary plan has not made or cannot be reasonably be expected to make a payment promptly." (Rec. Doc. 23 at 10). Collins avers that Wellcare's payments signify negligent, and not conditional, payments.

A Medicare organization can make a conditional payment "if a primary plan…has not made or cannot reasonably be expected to make payment with respect to such item or service promptly (as determined in accordance with regulations)." 42 U.S.C. § 1395y(2)(B)(i). There is nothing in the statute to support Collins' interpretation that the Medicare organization must engage in a thorough investigation to unequivocally ascertain whether payment from another source can be expected. Collins also fails to cite any case law that stands for this proposition. The regulations state that "conditional payment means a Medicare payment for services for which another payer is responsible, made either on the bases set forth in subparts C through H of this part, or because the intermediary or carrier did not know that coverage existed." 42 C.F.R. § 411.21.

This Court does not interpret any conflict in the situation where the secondary payer does not know of a primary payer's obligation to pay for medical expenses and the statutory language "cannot reasonably be expected to make payment." In other words, if a MAO is unaware of a primary payer, the MAO would not "reasonably expect" a primary plan to provide payment. Here, Wellcare sent multiple inquiries to Collins requesting information regarding other, potential sources of payment. Collins failed to respond to a single inquiry. Accordingly, the fact that Wellcare did not know of the primary plan when it funded Collins' medical expenses does not undermine the fact that those payments constituted conditional payments. The Court thus finds that Wellcare made a conditional payment and satisfies paragraph 2(A).

### 3.Double Damages

Although the Court has repeatedly recited the MSP private cause of action statutory text, the Court will again engage in this exercise to aid the statutory analysis.  42 U.S.C. § 1395y(b)(3)(A) states: "There is established a private cause of action for damages (*which shall be in an amount double the amount otherwise provided) in the case of a primary plan which fails to provide payment* (or appropriate reimbursement) in accordance with paragraphs (1) and (2)(A). (emphasis added).  This Court has already determined that Wellcare has a private cause of action pursuant to this provision, but the cause of action does not automatically afford a right to double damages.  Rather, a primary plan must *fail* to provide reimbursement in order to afford an MAO the right to pursue double damages.  Failure connotes an active dereliction of a duty, and the award of double damages is intended to have a punitive effect on plans who intentionally withhold payment.  As the Ninth Circuit noted, "[t]he private cause of action was intended to allow private parties to vindicate wrongs occasioned by the failure of primary plans to make payments."  *Parra*, 715 F.3d at 1154-55.  *See also Harris Corp. v. Humana Health Ins. Co. of Florida, Inc.*, 253 F.3d 598, 606 ("A private cause of action for double damages…serves Congress' interest in the fiscal integrity of the Medicare program by deterring private insurers primary to Medicare under the statute from attempting to lay medical costs at the government's doorstep.").

A failure to provide reimbursement does not describe the situation in the instant case, and the intended punitive remedy of double damages is therefore not appropriate.  Collins' duty to reimburse Wellcare only arose once she received her tort settlement, and when this occurred, Collins placed the money claimed by Wellcare into a trust.  Collins therefore did not conceal the

money or spend the money, but rather separated the funds until a court determined which party had a rightful claim over the funds.  This action does not comport with the Court's understanding of a "failure to provide payment," and the Court reads the plain language of  42 U.S.C. § 1395y(b)(3)(A) to mean that double damages is only available in the "the case" of a plan that satisfies the condition of "failure to provide payment."

Although Wellcare is not entitled to bring a cause of action for double damages, Wellcare maintains its right to bring a cause of action for reimbursement that is owed "in accordance with paragraphs (1) and (2)(a)" pursuant to 42 U.S.C. § 1395y(b)(3)(A).   The statutory language establishes a cause of action for withholding of payment in accordance with paragraphs(1) and (2)(A), and specifies double damages for a *failure* to provide such payment.  The remedy of double damages is therefore distinct from the private cause of action established by § 1395y(b)(3)(A) and is limited to those parties who fail to provide reimbursement.  Moreover, common sense compels this Court to find that the broad statutory language that affords a cause of action for double damages for a failure to pay contains the right to bring a cause of action for mere reimbursement when a primary plan withholds reimbursement.

### 4.Prescription

Finally, Collins contends that Wellcare's Counterclaim is prescribed and cites 42 U.S.C. § 1395y(b)(2)(B)(vi)[5] as authority that Wellcare had a three year period after it paid Collins the conditional payment to seek reimbursement.  (Rec. Doc. 25 at 13).  Collins avers that the claim is now prescribed because the statute of limitations is measured from the date of payment, and Wellcare forwarded payment in 2009.  42 U.S.C. § 1395y(b)(2)(B)(vi) states:

> Notwithstanding any other time limits that may exist for filing a claim under an
> employer group health plan, the United States may seek to recover conditional

---

[5] Collins' counsel acknowledged during oral argument a typo in her brief, and that while she had cited 42 U.S.C. § 1395y(b)(2)(B)(iv), she had meant to cite 42 U.S.C. § 1395y(b)(2)(B)(vi).

> payments in accordance with this subparagraph where the request is submitted to the entity required or responsible under this subsection to pay with respect to the item or service (or any portion thereof) under a primary plan within the 3-year period beginning on the date on which the item or service was furnished.

Wellcare urges the Court to apply the six year statute of limitations for government contracts contained within the Federal Claims Collection Act ("FCA").  28 U.S.C. § 2415(a) (citing *United States v. Stricker*, 524 F. App'x 500, 511 (11th Cir. 2013) (applying the six-year statute of limitations to a government cause of action for conditional payments under the FCA); *see also Manning*, 254 F.3d at 394 (holding that the FCA six-years statute of limitations is applicable to the MSP private cause of action).

    This Court is not persuaded by either party's position.  As part of the MSP, 42 U.S.C. § 1395y(b)(2)(B)(iii) provides:

> An action may not be brought by the United States under this clause with respect to payment owed unless the complaint is filed not later than 3 years after the date of the receipt of notice of a settlement, judgment, award, or other payment made pursuant to paragraph (8) relating to such payment owed.

President Obama signed this statute of limitations into law under the MSP as part of the Medicare and Repaying Taxpayers Act of 2012, also known as the SMART Act, in January 2013.  Although this statute of limitations specifically applies to a cause of action brought by the United States, the Court finds that the statute of limitations applies to all causes of actions brought under the Medicare Secondary Act.  Notably, the statutory language specifies that a cause of action must be brought within three years of the time that a party is notified of a settlement.  Here, Wellcare contends that it sent Collins numerous inquiries about a possible settlement and only learned of her settlement through the filing of this lawsuit.  (Rec. Doc. 18-3 ¶¶ 9-12; 21).  Collins does not dispute these facts.  (Rec. Doc. 25-2).  Accordingly, Wellcare is

within the three-year statute of limitations period, as Collins filed this lawsuit on November 26, 2013.

### 5. Amount of Reimbursement from Collins' Settlement

Collins disputes whether the settlement compensated her for her medical expenses.  (Rec. Doc. 25-2 at 2).   The MSP provides that a primary plan's responsibility for reimbursement may be demonstrated by a settlement:

> A primary plan's responsibility for such payment may be demonstrated by…a payment conditioned upon the recipient's compromise, waiver, or release (whether or not there is a determination or admission of liability) of payment for items or services included in claim against the primary plan or the primary plan's insured, or by other means.

42 U.S.C. § 1395y(b)(2)(b)(ii).  The CMS regulations further buttress that statutory language and include regulatory language that mirrors the quoted MSP statutory language.  See 42 C.F.R. 411.22(b)(2).  Moreover, the Medicare Manual states that "Medicare policy requires recovering payments from liability awards or settlements…without regard to how the settlement agreement stipulates disbursements should be made.  That includes situations in which the settlements do not expressly include damages for medical expenses.  MSP Manual, Ch. 7, § 50.4.4.

Relying on the statutory language and the agency regulations, other circuits have held that Medicare is entitled to full reimbursement when a settlement releases the tortfeasor from all further claims even when settlements do not specifically provide for medical expenses. Although these cases focus on government claims, and not a MAO's claims, the analysis of § 1395y(b)(2)(B)(ii)  still applies to conditional payments made by MAOs under the MSP cause of action.[6]   In *Hadden v. United States*, the Sixth Circuit held that under §1395y(b)(2)(B)(ii), a primary plan's "'responsibility' [to reimburse a conditional payment] is no longer an undefined

---

[6] Specifically, the MSP provides a private cause of action when a primary plan does not reimburse in accordance with paragraphs (1) and (2)(A).  The statutory language of paragraph (2)(A) incorporates subparagraph B, or §1395y(2)(B)(ii).

term into which courts might funnel their own notions of equitable apportionment," but rather, a claim that results in a settlement with a release of liability is evidence of the primary plan's reimbursement responsibility.  661 F.3d 298, 302 (6th Cir. 2011).  Moreover, the Sixth Circuit ultimately held that government was entitled to full reimbursement from the beneficiary's settlement when the settling tortfeasor was only 10% liable because the beneficiary's claim against the settling tortfeasor included full medical expenses.  Id. at 303.  In other words, the Sixth Circuit did not apportion the settlement.

The Third Circuit adopted the Sixth Circuit's analysis, holding that "the fact of settlement alone, if it releases a tortfeasor from claims for medical expenses, is sufficient to demonstrate [an] obligation to [fully reimburse] Medicare." *Taranksy*, 760 F. 3d at 315.  Other circuit courts have also required beneficiaries to fully reimburse conditional payments from settlements that did not specifically include compensation for medical costs. *See Benson v. Sebelius*, 771 F. Supp. 2d 68, 75-76 (D.D.C. 2011).  (holding that CMS is entitled to reimbursement from a wrongful death settlement when plaintiff's claim included a claim for medical expenses and plaintiff provided no evidence that settlement did not account for medical expenses); *Mathis v. Leavitt*, 554 F.3d  731, 733 (8th Cir. 2009) (finding that beneficiaries were required to reimburse CMS from the proceeds of wrongful death suit even though the parties did not specifically address obligations to Medicare).

The Court remains largely in the dark about the nature of the settlement at issue in this case.  Collins disputes whether she received any compensation for her medical expenses, and while the Court believes that she did likely receive compensation based on the nature of her claim, it remains a disputed material fact.  Moreover, it is not evident whether the settlement released the tortfeasor from all liability for medical expenses.  Wellcare includes an affidavit that

30

attests to this fact, but it remains a contested fact.  Based on these disputed facts, the Court cannot grant summary judgment as to the amount of reimbursement.  Nevertheless, the Court believes that a dispositive motion can likely resolve this issue and urges the parties to file such a motion.

## IV.     CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that Wellcare's Motion to Dismiss and Motion for Summary Judgment (Rec. Doc. 18) is **GRANTED IN PART AND DENIED IN PART**.  The motion is granted insofar as it seeks dismissal of Collins' claim for declaratory judgment.  The motion is also granted with respect to Wellcare's claim that it has a private cause of action under the MSP and is entitled to reimbursement from Collins' tort settlement.  It is denied with respect to the amount of Wellcare's reimbursement, if any, because it remains a disputed material fact as to whether Collins' tort settlement provided compensation for her medical expenses and as to whether the settlement released the tortfeasor from all liability.

New Orleans, Louisiana this 16th day of December, 2014.

UNITED STATES DISTRICT JUDGE